UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELLIE SAMI, | No. C 12-00108 DMR |
|     Plaintiff, | **ORDER DENYING PLAINTIFF'S MOTION TO REMAND; GRANTING DEFENDANT'S MOTION TO DISMISS; AND DENYING DEFENDANT'S MOTION TO STRIKE.** |
| v. | |
| WELLS FARGO BANK, et al., | |
|     Defendants. | |

This matter comes before the court on Plaintiff Mellie Sami's Motion to Remand and Defendant Wells Fargo Bank's Motion to Dismiss and Motion to Strike. The court conducted a hearing on March 15, 2012, during which the parties were given an opportunity to present oral argument. For the reasons below, the court hereby DENIES Plaintiff's Motion to Remand, GRANTS Defendant's Motion to Dismiss, and DENIES Defendant's Motion to Strike as moot.

**I. BACKGROUND**

On July 19, 2007, Plaintiff Mellie Sami ("Sami") executed a promissory note in favor of World Savings Bank, FSB ("World Savings Bank") for $500,000, which was secured by a deed of trust on real property located at 509 Silver Maple Drive, Hercules, California ("the property").

(Compl. ¶ 10; Defs.' Req. for Judicial Notice in Supp. of Mot. to Dismiss[1] ("RJN 1"), Ex. F.) Golden West Savings Association Service Co. was named as the trustee on the deed of trust. (Compl. ¶ 10; RJN 1, Ex. F.) In 2007, World Savings Bank changed its name to Wachovia Mortgage, FSB. In 2009, Wachovia Mortgage, FSB became Wachovia Mortgage, a division of Wells Fargo Bank, N.A. ("Wells Fargo"). (RJN 1, Exs. A-E.[2]) At some point, NDEx West, L.L.C. ("NDEx") was substituted as the trustee on the deed of trust. (*See* Compl. ¶ 11.)

On October 18, 2010, NDEx, acting as the trustee, executed a Notice of Default alleging that Plaintiffs defaulted on the loan on August 1, 2010 and that the amount due on the note was $9,520.02. (Compl. ¶ 11; RJN 1, Ex. H.) An individual named Menghong But signed the Notice of Default acting on behalf of LSI Title Company ("LSI"), which in turn acted as an agent of NDEx. (RJN 1, Ex. H.)

On January 19, 2011, NDEx executed a Notice of Trustee's Sale setting the trustee's sale for February 8, 2011. (Compl. ¶ 12; RJN 1, Ex. I.) The sale apparently was postponed multiple times, and was finally set for December 20, 2011.[3] [*See* Docket No. 1, at 82-84.]

On December 13, 2011, Plaintiff filed her complaint against Wells Fargo and NDEx in Contra Costa County Superior Court alleging six causes of action: 1) declaratory relief; 2) injunctive relief; 3) unfair business practices; 4) cancellation of written instrument; 5) negligence; and 6) violation of the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), California Civil

---

[1] The court grants Defendant Wells Fargo's request for judicial notice of Exhibits F, H, and I, the deed of trust, notice of default, and notice of trustee's sale recorded in connection with Plaintiff's loan. They are true and correct copies of official public records of the Contra Costa County Recorder's Office, and their authenticity is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b). Plaintiff did not object to the court taking judicial notice of these or any other documents submitted in support of the motion to dismiss.

[2] The court grants Defendant Wells Fargo's request for judicial notice of Exhibits A through E, which establish the history of Wachovia Mortgage, FSB. The court finds that these are true and correct copies of documents reflecting official acts of the executive branch of the United States, and that they are judicially noticeable pursuant to Rule 201(b)(2) of the Federal Rules of Evidence.

[3] The property eventually was sold at a trustee's sale on January 19, 2012. (*See* Pl.'s Opp'n to Mot. to Dismiss, 7.)

Code section 1788 *et seq*. (Compl. 12-19.) Wells Fargo removed the case to federal court on January 6, 2012.

## II. MOTION TO REMAND

### A. Legal Standard

Under the removal statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction[] may be removed by the defendant" to federal court. 28 U.S.C. § 1441(a). A district court has diversity jurisdiction where the matter in controversy exceeds the sum of $75,000, and is between citizens of different States. *Id.* § 1332(a). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citations omitted). Remand to state court must be ordered when a district court lacks subject matter jurisdiction. *See* 28 U.S.C. § 1447(c).

### B. Analysis

Defendant Wells Fargo removed this action on the basis of diversity jurisdiction, claiming that it is a citizen of South Dakota and that the complaint alleges Plaintiff is a citizen of California. [*See* Docket No. 1.] Plaintiff moves to remand on the basis that this court lacks subject matter jurisdiction over this action because both she and Wells Fargo are citizens of California.[4]

All national banking associations are "deemed citizens of the States in which they are respectively located." 28 U.S.C. § 1348. The Supreme Court has interpreted Section 1348 to mean that "a national bank ... is a citizen of the State in which its main office, as set forth in its articles of association, is located." *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 307 (2006). Wells Fargo is a national banking association and its articles of association establish that its main office is located

---

[4] In her motion, Plaintiff admits that she is a citizen of California. (Pl.'s Mot. to Remand 3.) She further concedes that Defendant NDEx, which is domiciled in Texas, is "not to be considered for purposes of determining diversity of citizenship." (Pl.'s Mot. to Remand 3.) Thus, Plaintiff's motion is based solely on a challenge to Wells Fargo's citizenship.

3

in Sioux Falls, South Dakota. (*See* Def.'s Req. for Judicial Notice in Supp. of Opp'n to Mot. to Remand ("RJN 2"), Ex. 1-3.[5]) Accordingly, Wells Fargo is a citizen of South Dakota.

Plaintiff argues that Wells Fargo should also be considered a citizen of California because California is the location of its principal place of business. (Pl.'s Mot. to Remand 5-7.) She contends that the principal place of business test, which is used for determining the citizenship of corporations, is equally applicable to a national banking association such as Wells Fargo. (Pl.'s Mot. to Remand 4-5.) According to Plaintiff, Congress has prescribed that a corporation "shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business." 28 U.S.C. § 1332(c)(1). However, Section 1348, and not Section 1332(c)(1), governs citizenship for national banking associations, and there is no reference to "principal place of business" within that provision. *See Schmidt*, 546 U.S. at 317 n.9. While *Schmidt* did not decide whether a national banking association's principal place of business provides an additional possible state of citizenship under Section 1348, courts have rejected that statutory interpretation. *Wells Fargo Bank, N.A. v. WMR e-PIN, LLC*, 653 F.3d 702, 708-09 (8th Cir. 2011) ("If Congress intended . . . to include principal place of business as a location for [citizenship of] a national bank, . . . Congress could have provided for that in the statutory language . . . . It did not . . . . Accordingly, we hold that, pursuant to § 1348, a national bank is a citizen only of the state in which its main office is located."); *see also Lowdermilk v. U.S. Bank, N.A.*, 479 F.3d 994, 997 (9th Cir. 2007) (determining national bank's citizenship based on location of main office, citing *Schmidt*); *Hicklin Eng'g L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006) ("National banks are citizens only of the states in which their main offices are located.")

Since *Schmidt*, many courts within this district have also rejected the principal place of business test when determining a national bank's citizenship. *See, e.g.*, *Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022, 1027-28 (N.D. Cal. 2010) (holding Wells Fargo's citizenship was

---

[5] The court grants Defendant Wells Fargo's request for judicial notice of Exhibits 1 through 3, which establish Wells Fargo is a national banking association and that its main office is located in South Dakota. The court finds that these are true and correct copies of documents reflecting official acts of the executive branch of the United States, and that they are judicially noticeable pursuant to Rule 201(b)(2) of the Federal Rules of Evidence.

4

state in which main office is located and not state in which principal place of business is located); *DeLeon v. Wells Fargo Bank, N.A.*, 729 F. Supp. 2d 1119, 1124 (N.D. Cal. 2010) ("[T]his Court will decline Plaintiffs' invitation to apply a principal place of business test to Wells Fargo. Consequently, the Court concludes that Wells Fargo is a citizen of the state in which its main office, as specified in its articles of association, is located."); *Moreno v. Wells Fargo Bank, N.A.*, No. 11-05189, 2011 WL 6372637, at *3-5 (N.D. Cal. Dec. 20, 2011) (rejecting principal place of business test and applying main office test for purposes of determining Wells Fargo's citizenship); *Atienza v. Wells Fargo Bank, N.A.*, No. 10-03457, 2011 WL 11507, at *2 (N.D. Cal. Jan. 4, 2011) ("In essence, plaintiffs are requesting that the Court apply a principal place of business test to determine where a national banking association is located. That precise argument has previously been considered and rejected by other decisions from this district . . . . Thus, Wells Fargo is a citizen of South Dakota for purposes of diversity jurisdiction."). For the same reasons, this court also declines to apply the principal place of business test to determine the citizenship of Wells Fargo. Accordingly, as Wells Fargo is a citizen of South Dakota pursuant to Section 1348, it has satisfied the requirements for diversity jurisdiction. Plaintiff's motion to remand is therefore denied.

### III.  MOTION TO DISMISS

**A.  Legal Standard**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case "only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation and quotation marks omitted). When a complaint presents a cognizable legal theory, the court may grant the motion if the complaint lacks "sufficient factual matter to state a facially plausible claim to relief." *Id*. (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)). A claim has facial plausibility when

a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citation omitted).

"[A] court may take judicial notice of 'matters of public record,'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading" without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). "The district court will not accept as true pleading allegations that are contradicted by facts that can be judicially noticed or by other allegations or exhibits attached to or incorporated in the pleading." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1363 (3d ed. 2004).

As noted, Plaintiff's complaint contains six causes of action: 1) declaratory relief; 2) injunctive relief; 3) unfair business practices; 4) cancellation of written instrument; 5) negligence; and 6) violation of the Rosenthal Act. The court will address each in turn after setting out the theories on which Plaintiff bases all of her claims.

**B.  Plaintiff's Theories**

Plaintiff's entire complaint is premised on three theories of alleged wrongdoing. Plaintiff's first theory is that as a result of her loan having been "securitized," Wells Fargo is not the rightful owner of the loan and thus, it lacked standing to foreclose on the property. (Compl. ¶¶ 1, 13, 25.) In addition, Plaintiff asserts that Wells Fargo has no enforceable rights as to the property because it improperly securitized her loan by allegedly violating the express terms of a Pooling and Service Agreement ("PSA"). (Compl. ¶¶ 14, 29, 31.) Plaintiff's third theory is that the Notice of Default was not executed by a properly authorized party and as such, that document and all subsequently executed instruments, including the Notice of Trustee's Sale, are void. (Compl. ¶¶ 8, 11, 12.) Because these documents should therefore be considered inoperative, Plaintiff alleges that Wells Fargo lacked standing to foreclose on the property. (*See, e.g.*, Compl. ¶ 29.) As set forth below, none of these three theories is legally cognizable.

### 1. Securitization of the Loan

Plaintiff bases her lawsuit in part upon the theory that Wells Fargo had no legal right to instruct the trustee to foreclose on the property. Specifically, Plaintiff alleges that Defendants "are believed to have unlawfully sold, assigned and/or transferred their ownership and security interest" in the promissory note ("note") and Deed of Trust. (Compl. ¶ 1.) Accordingly, Plaintiff alleges that nonjudicial foreclosure on the property was improper because Wells Fargo has no "lawful ownership or security interest in Plaintiff's real property." (Compl. ¶ 1; *see also* Compl. ¶¶ 13-14.)

As already recognized by numerous courts, a defendant bank does not invalidate its ability to enforce the terms of a deed of trust if the loan is assigned to a trust pool or Real Estate Mortgage Investment Conduit ("REMIC").[6] *See, e.g., Wadhwa v. Aurora Loan Servs., LLC*, No. 11-1784, 2011 WL 2681483, at *4 (E.D. Cal. July 8, 2011) (rejecting argument that "assignment of the note to a [REMIC] renders any interest in the property other than plaintiffs' somehow invalid"); *Hafiz v. Greenpoint Mortgage Funding, Inc.*, 652 F. Supp. 2d 1039, 1043 (N.D. Cal. 2009) (argument that "all defendants lost their power of sale pursuant to the deed of trust when the original promissory note was assigned to a trust pool" is "both unsupported and incorrect"); *Benham v. Aurora Loan Servs.*, No. 09-2059, 2009 WL 2880232, at *3 (N.D. Cal. Sept. 1, 2009) ("Other courts in this district have summarily rejected the argument that [lenders] lose their power of sale pursuant to the deed of trust when the original promissory note is assigned to a trust pool."). The alleged "securitization of a loan does not in fact alter or affect the legal beneficiary's standing to enforce the deed of trust." *Reyes v. GMAC Mortgage LLC*, No. 11-0100, 2011 WL 1322775, at *2 (D. Nev. Apr. 5, 2011); *see also Nguyen v. Bank of Am. Nat'l Ass'n*, No. 11-3318, 2011 WL 5574917, at *9 (N.D. Cal. Nov. 15, 2011) (securitization of mortgage loan does not provide mortgagor with cause of action). "[S]ecuritization merely creates a separate contract, distinct from [p]laintiffs['] debt obligations under the note, and does not change the relationship of the parties in any way." *Reyes*, 2011 WL 1322775, at *3 (citation omitted).

---

[6] Indeed, Plaintiff has not cited any case that reached a different conclusion.

### 2. Violations of the PSA

Plaintiff also alleges that the note was improperly securitized because Wells Fargo "violated the express terms of the [PSA]." (Compl. ¶ 14.) Plaintiff claims that the note was transferred to a "Securitized Trust," which in turn was governed by the PSA. (Compl. ¶ 13.) According to Plaintiff, the "PSA specifies the rights and obligations of each party to the securitization transaction [and] the PSA requires strict compliance with its procedures and timelines." (Compl. ¶ 14.) Wells Fargo allegedly failed to meet certain requirements as set forth under the PSA and thus, it did not properly assign or transfer the note to the Securitized Trust. (Compl. ¶¶ 16-25.) For example, Plaintiff alleges that Wells Fargo failed to transfer or assign the note or Deed of Trust to the Securitized Trust by the "closing date," and that therefore, "under the PSA, any alleged assignment beyond the specified closing date" is void. (Compl. ¶ 21.) Because Defendants and other parties to the Securitized Trust allegedly did not meet the PSA requirements, Plaintiff claims that her note was never properly securitized. (*See* Compl. ¶ 13.) As a result, Plaintiff alleges that neither Wells Fargo nor the beneficiaries of the Securitized Trust have any enforceable rights as to the property. (Compl. ¶¶ 29, 31.)

To the extent Plaintiff bases her claims on the theory that Wells Fargo allegedly failed to comply with the terms of the PSA, the court finds that she lacks standing to do so because she is neither a party to, nor a third party beneficiary of, that agreement. *See In re Correia*, 452 B.R. 319, 324 (B.A.P. 1st Cir. 2011) (holding debtors, as neither parties to nor third party beneficiaries of a PSA, lack standing to challenge mortgage assignment based on non-compliance with agreement); *see also Junger v. Bank of Am.*, No. 11-10419, 2012 WL 603262, at *3 (C.D. Cal. Feb. 24, 2012) ("The Court finds that plaintiff lacks standing to challenge the process by which his mortgage was (or was not) securitized because he is not a party to the PSA."); *Tilley v. Ampro Mortg.*, No. 11-1134, 2012 WL 33033, at *4 (E.D. Cal. Jan. 6, 2012) (holding plaintiff lacked standing to assert securitization of her loan violated terms of PSA, to which she was not a party); *Bascos v. Fed. Home Loan Mortg. Corp.*, No. 11-3968, 2011 WL 3157063, at *6 (C.D. Cal. July 22, 2011) ("To the extent Plaintiff challenges the securitization of his loan because Freddie Mac failed to comply with the terms of its securitization agreement, Plaintiff has no standing to challenge the validity of the

1  securitization of the loan as he is not an investor of the loan trust."); *cf. Lucia v. Wells Fargo Bank,*
2  *N.A.*, 798 F. Supp. 2d 1059, 1070-71 (N.D. Cal. 2011) (finding borrowers, who were neither parties
3  to nor intended third party beneficiaries of Servicer Participation Agreement between Wells Fargo
4  and Fannie Mae, lack standing to assert a breach of contract claim.)

### 3. Violation of California Civil Code Section 2924(a)(1)

6  Finally, Plaintiff's lawsuit is also based upon the theory that Wells Fargo and its agents
7  violated California Civil Code section 2924(a)(1) by improperly executing the Notice of Default.
8  (Compl. ¶¶ 8, 11, 12.) As such, Plaintiff asserts that the Notice of Default and all subsequently
9  recorded documents are void. (Compl. ¶¶ 8, 11, 12.) Plaintiff claims that Wells Fargo "cannot
10 conduct any Trustee's sale regarding the subject property" because such sale would be based upon
11 "void documents." (Compl. ¶ 29.)

12 Under section 2924(a)(1), a "trustee, mortgagee or beneficiary or any of their authorized
13 agents" may initiate the foreclosure process upon default. Cal. Civ. Code § 2924(a)(1). Menghong
14 But signed the Notice of Default, acting on behalf of LSI, which in turn was an agent of NDEx. (*See*
15 RJN 1, Ex. H.) Plaintiff claims that because Wells Fargo had not substituted NDEx as the trustee to
16 the Deed of Trust, Golden West was still the trustee of record. (Compl. ¶ 11.) In addition, Plaintiff
17 claims that even if NDEx acted as an authorized agent of Golden West, Defendants nonetheless
18 violated section 2924 because "an agent of an agent of an agent cannot validly sign a [Notice of
19 Default.]" (Compl. ¶ 11.) She alleges that Defendants' violation of section 2924 voids the Notice of
20 Default and all subsequently recorded documents, and consequently, Wells Fargo lacked authority to
21 foreclose on the property. (Compl. ¶¶ 12, 29.)

22 However, Plaintiff's claims premised on this theory must be dismissed because they are
23 preempted by federal law. Pursuant to the Supremacy Clause, federal law preempts state law "when
24 federal regulation in a particular field is so pervasive as to make reasonable the inference that
25 Congress left no room for the States to supplement it." *Bank of Am. v. City and Cnty. of S.F.*, 309
26 F.3d 551, 558 (9th Cir. 2002) (citation omitted). Congress has created "an extensive federal
27 statutory and regulatory scheme" in the field of banking. *Id.* As part of this scheme, Congress
28 provided the Office of Thrift Supervision ("OTS") with broad authority under the Home Owners'

9

Loan Act ("HOLA"), 12 U.S.C. § 1461 *et seq.*, to issue regulations governing federally chartered savings associations. *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1004-05 (9th Cir. 2008). Wells Fargo's predecessor, World Savings Bank, was a federally chartered savings bank regulated by the OTS under HOLA at the time Plaintiff entered into her loan.[7] (*See* RJN 1, Ex. A.) The OTS is expressly authorized "to promulgate regulations that preempt state laws affecting the operations of federal savings associations." 12 C.F.R. § 560.2(a).

A HOLA preemption analysis first requires a court to determine whether the law at issue is identified in 12 C.F.R. § 560.2(b), which provides a nonexclusive list of the types of state laws preempted by HOLA. *See Silvas*, 514 F.3d at 1005. Among the laws specifically preempted are those affecting:

> (4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;
>
> (5) Loan-related fees, including without limitations, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees; . . .
>
> (9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;
>
> (10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages.

12 C.F.R. § 560.2(b)(4), (5), (9) and (10). If the state law at issue falls into one of the enumerated categories, then it is preempted. *Silvas*, 514 F.3d at 1005. If it does not fall into one of the enumerated categories but affects lending, a presumption of preemption arises that is reversed only "if the law can clearly be shown to fit within the confines of paragraph (c) [of section 560.2]." *Id.* Section 560.2(c) excepts from preemption "[s]tate laws . . . that . . . only incidentally affect the

---

[7] HOLA applies even though successor Wells Fargo is not chartered as a federal savings bank. *See Haggarty v. Wells Fargo Bank, N.A.*, No. 10-02416, 2011 WL 445183, at *4 (N.D. Cal. Feb. 2, 2011) ("'Where a national association, such as Defendant, acquires the loan of a federal savings bank, it is proper to apply preemption under HOLA.'") (quoting *Guerrero v. Wells Fargo Bank, N.A.*, No. 10-5095, 2010 U.S. Dist. LEXIS 96261, at *8 (C.D. Cal. Sept. 14, 2010)).

10

lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a)." 12 C.F.R. § 560.2(c).

Here, the court concludes that Plaintiff's claims premised upon Wells Fargo's violation of California's nonjudicial foreclosure statute, California Civil Code section 2924, are preempted by HOLA. Plaintiff challenges Wells Fargo's initiation of the foreclosure process by alleging that Wells Fargo violated section 2924 in allowing an unauthorized agent to execute the Notice of Default. Section 520(b) expressly preempts state laws affecting the "processing, . . . servicing, sale or purchase of . . . mortgages." 12 C.F.R. § 560.2(b)(10). Initiation of the foreclosure process is the type of lending activity expressly contemplated by § 560.2(b)(10) because it constitutes the "processing" and "servicing" of a mortgage. Because Plaintiff's claims are premised upon a state law that directly relates to and affects lending, they are preempted by HOLA and must be dismissed.

Numerous courts within this district have also concluded that claims arising under California Civil Code section 2924 are preempted by HOLA. *See, e.g.*, *DeLeon v. Wells Fargo Bank, N.A.*, 729 F. Supp. 2d 1119, 1126 (N.D. Cal. 2010) (finding HOLA preempts claims that allege violations of section 2924) ; *Wienke v. Indymac Bank FSB*, No. 10-4082, 2011 WL 871749, at *4 (N.D. Cal. Mar. 14, 2011) (finding claims premised on section 2924 violations preempted by HOLA); *Giordano v. Wachovia Mortg., FSB*, No. 10-04661, 2010 WL 5148428, at *4 (N.D. Cal. Dec. 14, 2010) (finding that section 2924 "fall[s] squarely within § 560.2(b)(10), preempting '[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages.'"); *Stefan v. Wachovia*, No. 09-2252, 2009 WL 4730904, at *2-3 (N.D. Cal. Dec. 7, 2009) (finding HOLA preempts violations of section 2924). As such, any of Plaintiff's claims premised on Wells Fargo's alleged failure to comply with section 2924 are preempted by HOLA.

### C. Plaintiff's Causes of Action

#### 1. Declaratory Relief

Plaintiff's first claim is for declaratory relief. Declaratory relief is not an independent cause of action, but rather, it is a form of relief. *Logvinov v. Wells Fargo Bank*, No. 11-04772, 2011 WL 6140995, at *4 (N.D. Cal. Dec. 9, 2011); *Santos v. Countrywide Home Loans*, No. 09-02642, 2009 WL 3756337, at *5 (E.D. Cal. Nov. 6, 2009).

Plaintiff alleges that Wells Fargo "do[es] not have the right to foreclose on the Subject Property because [it] ha[s] failed to perfect any security interest in the Subject Property." (Compl. ¶ 29.) She bases this claim on allegations that Wells Fargo securitized the loan, failed to comply with the terms of the PSA, and violated section 2924 by improperly executing the Notice of Default. (Compl. ¶ 29.) To the extent Plaintiff bases this claim on the securitization of the loan and violations of the PSA, the claim fails for the reasons set forth above. Further, because HOLA preempts Wells Fargo's alleged violation of section 2924, Plaintiff's claim for declaratory relief fails on this ground as well. *See, e.g.*, *Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022, 1033 (N.D. Cal. 2010) (plaintiff's claim for declaratory relief dismissed as preempted by HOLA).

### 2. Injunctive Relief

Plaintiff's second cause of action is for injunctive relief. However, injunctive relief, like declaratory relief, is not an independent cause of action, but is a form of relief. *Logvinov*, 2011 WL 6140995, at *4; *Mehta v. Wells Fargo Bank, N.A.*, 737 F. Supp. 2d 1185, 1205 (S.D. Cal. 2010) ("Injunctive relief, like damages, is a remedy requested by the parties, not a separate cause of action.") (citation and quotation marks omitted); *Hamilton v. Bank of Blue Valley*, 746 F. Supp. 2d 1160, 1182 (E.D. Cal. 2010) ("Injunctive relief is a remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief may be granted.") (citation and quotation marks omitted).

Plaintiff's injunctive relief "claim" fails for similar reasons as her first claim. Plaintiff alleges that Wells Fargo has "illegally commenced foreclosure under the Note on the Subject Property . . . supported by VOID and false or fraudulent documents." (Compl. ¶ 33.) Because Plaintiff's claim is based on Wells Fargo's alleged violations of section 2924, it fails because HOLA preempts such allegations. In her prayer for relief, Plaintiff requests that the court issue "[a] [t]emporary restraining order and [p]reliminary and [p]ermanent [i]njunction enjoining any and all Trustee's Sales." (Compl. 20.) To the extent Plaintiff solely seeks to enjoin Wells Fargo from foreclosing on the property, her claim is moot because NDEx sold the property at a trustee's sale on

12

January 19, 2012.[8] *See Jimenez v. Metrocities Mortg., LLC*, No. 11-009551, 2012 WL 13664, at *3 (N.D. Cal. Jan. 4, 2012) ("Even if the claim for injunctive relief was valid, it is nonetheless moot as the foreclosure sale has already occurred."); *see also Ruvalcaba v. City of LA*, 167 F.3d 514, 521 (9th Cir. 1999) ("If there is no longer a possibility that [plaintiff] can obtain relief for his claim, that claim is moot and must be dismissed for lack of jurisdiction.") Plaintiff has not identified any other type of injunctive relief she seeks. Accordingly, Plaintiff's claim for injunctive relief must be dismissed.

### 3.    Unfair Business Practices

Plaintiff's third cause of action seeks relief for Wells Fargo's alleged violations of California Business & Professions Code section 17200 *et seq.* ("section 17200") and California Penal Code section 115.5.[9] "[C]laims premised upon state laws of general applicability, such as fraud or deceit, may be preempted if the state law, as applied, is a type of law contemplated by 12 C.F.R. § 560.2(b)." *DeLeon v. Wells Fargo Bank, N.A.*, No. 10-01390, 2011 WL 311376, at *6 (N.D. Cal. Jan. 28, 2011); *see also Silvas*, 514 F.3d at 1006. Generally, however, when courts find HOLA preempts claims of fraud or misrepresentation, the allegations are related to "inadequate disclosures of fees, interest rates, or other loan terms," or "inadequate notice of various rights and procedures during the foreclosure process." *DeLeon*, 2011 WL 311376, at *6.

Plaintiff alleges that Wells Fargo and other Defendants "fraudulently and knowingly procured or offered false or fraudulently prepared documents." (Compl. ¶ 37.) Plaintiff claims that such documents "contain irregularities as to the signatures" and "were not executed by properly authorized parties." (Compl. ¶ 37.) She also alleges that Defendants engaged in a "pattern and

---

[8] At the hearing, the court repeatedly asked Plaintiff's counsel whether he could identify any claims that he would seek to bring on Plaintiff's behalf that would not be subject to the rulings in this motion. Plaintiff's counsel responded that he would seek to amend the complaint to add a claim for "wrongful foreclosure" or to otherwise set aside the foreclosure sale, in order to address the fact that Wells Fargo foreclosed on Plaintiff's property after she filed her original complaint. However, Plaintiff's counsel conceded that any claim challenging the foreclosure would be based on the theories already addressed in this motion – namely, securitization of the loan, and improper processing of the mortgage. Thus, such an amendment would be futile.

[9] Plaintiff cannot assert claims under California Penal Code section 115.5 because that section does not explicitly provide for a private right of action. *See Wallace v. Mortg. Elec. Registration Sys.*, No. 11-8039, 2012 WL 94485, at *3 (C.D. Cal. Jan. 11, 2012).

practice of billing Plaintiff for unauthorized default charges and fees, including, but not limited to, late fees resulting from misapplied payments." (Compl. ¶ 39.)

HOLA explicitly preempts any state law affecting the "processing . . . [of] mortgages" and any state law affecting "[l]oan related fees, including . . . late charges . . . and overlimit fees." *See* 12 C.F.R. § 560.2(b)(5) and (10). Plaintiff's claim rests on allegations that Wells Fargo and its agents failed to properly execute a Notice of Default and thus, they violated section 2924. Because Plaintiff's section 17200 claim is premised a state law that regulates how lenders "process mortgages," it is preempted by § 560.2(b)(10). Further, § 560.2(b)(5) preempts Plaintiff's section 17200 claim to the extent it is based on allegations that Wells Fargo charged Plaintiff late and/or unauthorized fees. Various courts within this district have found that HOLA preempts similar section 17200 claims. *See, e.g.*, *Nguyen*, 749 F. Supp. 2d 1022 at 1037; *Sato v. Wachovia Mortg., FSB*, No. 11-00810, 2011 WL 2784567, at *7 (N.D. Cal. July 13, 2011); *Giordano v. Wachovia Mortg., FSB*, No. 10-04661, 2010 WL 5148428, at *5 (N.D. Cal. Dec. 14, 2010)*; see also Silvas*, 514 F.3d at 1006 (holding state law unfair competition claim under section 17200 based on "alleged misrepresentations" preempted by HOLA). Because HOLA preemption applies in this context, Plaintiff's section 17200 claim is dismissed.

### 4.     Cancellation of Written Instrument

Plaintiff's fourth cause of action seeks to void and cancel the "deed of trust and all subsequently recorded documents" pursuant to California Civil Code section 3412. (Compl. ¶ 45.) Plaintiff does not allege why these documents should be considered void, but merely states that they "are void for the reasons set forth hereinabove." (Compl. ¶ 44.) Although she fails to explicitly state so, the court assumes Plaintiff bases this cause of action on Wells Fargo's purported violations of section 2924 in that Wells Fargo and its agents allegedly failed to meet the requirements of properly recording the Notice of Default. Because claims based upon an alleged violation of section 2924 are preempted, Plaintiff's claim for cancellation of written instrument must be dismissed. *See Curcio v. Wachovia Mortg. Corp.*, No. 09-1498, 2009 WL 3320499, at *6 (S.D. Cal. Oct. 14, 2009) (finding Plaintiff's state claim for cancellation of instrument preempted under HOLA); *cf. Ayala v. World Sav. Bank, FSB*, 616 F. Supp. 2d 1007, 1020 (C.D. Cal. 2009) ("[T]o the extent that

14

1  [Plaintiffs' cancellation] claim is based on allegations that Defendants . . . submitted documents with
2  falsities contained therein to Plaintiffs, then it would appear that Plaintiffs' claim would be
3  preempted by § 560.2(b)(9) which relates to "disclosures.").

### 5. Negligence

Plaintiff's fifth cause of action alleges that Wells Fargo "owed a duty of care to properly manage Plaintiff's loan account, to deal honestly and in good faith in dealing with Plaintiff's loans and any foreclosure proceedings, and, finally, to act properly as to the securitization or other transactions undertaken that materially impacted Plaintiff's loan." (Compl. ¶ 47.) Under California law, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1096 (1991); *DeLeon*, 2011 WL 311376, at *9; *Bascos*, 2011 WL 3157063, at *7. The "inability to plead a duty of care . . . precludes [the] maintenance of a cause of action on any negligence theory." *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 349 (1997). Because Plaintiff premises her claim on Wells Fargo's alleged wrongdoing in the context of foreclosing upon her loan, she is unable to establish that Wells Fargo, as a "mere lender of money," owed her any duty of care. As such, Plaintiff's negligence claim must be dismissed.

### 6. Violation of the Rosenthal Act

Plaintiff's final cause of action seeks relief from Wells Fargo for fabricating documents, making false representations, and engaging in unfair collection practices under the Rosenthal Act, California Civil Code section 1788.17. (*See* Compl. ¶ 51.) The Rosenthal Act prohibits "debt collectors" from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Penny v. NDeX West LLC*, No. 11-05567, 2012 WL 589639, at *6 (C.D. Cal. Feb. 22, 2012). The Rosenthal Act defines a "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code § 1788.2(c). To state a claim for violation of the Rosenthal Act, "a plaintiff must allege that the defendant is a 'debt collector' collecting a 'debt.'" *Izenberg v. ETS*

15

1 *Servs., LLC*, 589 F.Supp.2d 1193, 1199 (C.D. Cal. 2008) (quoting *Ines v. Countrywide Home Loans*,
2 No. 08-1267, 2008 WL 4791863, at *2 (S.D. Cal. Nov. 3, 2008)).

3       Plaintiff's claim must be dismissed because she fails to allege that Wells Fargo is a "debt
4 collector" nor identify which provisions of the Rosenthal Act it purportedly violated. The complaint
5 merely states that Defendants "improperly attempted to collect funds" and made misrepresentations
6 "in an attempt to collect a debt." (Compl. ¶ 51.) Furthermore, even if Plaintiff had alleged Wells
7 Fargo is a "debt collector," her claim nonetheless must be dismissed because a lender that forecloses
8 on a property pursuant to a deed of trust is not a "debt collector" within the meaning of the
9 Rosenthal Act. *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1200 (E.D. Cal. 2010);
10 *Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111, 1135 (N.D. Cal. 2009); *Izenberg*, 589 F.
11 Supp. 2d at 1199; *Powell v. Residential Mortg. Capital*, No. 09-04928, 2010 WL 2133011, at *6
12 (N.D. Cal. May 24, 2010). Because Plaintiff alleges that Wells Fargo's actions arose in the context
13 of foreclosure proceedings, Wells Fargo is not a "debt collector" under the Rosenthal Act. As such,
14 Plaintiff has failed to state a claim under the Rosenthal Act.

15     **D.**     **Leave to Amend**

16       Federal Rule of Civil Procedure 15(a) establishes that leave to amend "shall be freely given
17 when justice so requires." In general, valid reasons for denying leave to amend include undue delay,
18 bad faith, prejudice, and futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Thinket Ink*
19 *Info. Res., Inc. v. Sun Microsystems, Inc.,* 368 F.3d 1053, 1061 (9th Cir. 2004); *Nguyen*, 749 F.
20 Supp. 2d at 1038 (dismissing all of plaintiff's claim without leave to amend).

21       At the hearing on this motion, the court specifically and repeatedly inquired whether
22 Plaintiff's counsel could identify any additional facts or legal theories to support her claims. As
23 noted above, Plaintiff's counsel only identified a potential amendment to address the fact that a
24 foreclosure sale took place after Plaintiff filed her original complaint. Plaintiff's counsel conceded
25 that any causes of action flowing from the foreclosure sale would solely be based on the theories that
26 the court has addressed through this motion. Given this fact, the court finds that any amendment
27 would be futile.

28

16

### IV. MOTION TO STRIKE

Wells Fargo moves to strike Plaintiff's section 17200 claim. Because all of Plaintiff's claims are dismissed without leave to amend, Defendant's motion to strike is denied as moot.

### V. CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand is DENIED, Defendant Wells Fargo's motion to dismiss is GRANTED without leave to amend, and Defendant Wells Fargo's motion to strike is DENIED as moot.

IT IS SO ORDERED.

Dated: March 21, 2012

DONNA M. RYU
United States Magistrate Judge